| | | |
|---|---|---|
| **HEIDI S.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:18-cv-00326-JHR** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant** | ) | |

## MEMORANDUM DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal

raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff

capable of performing work existing in significant numbers in the national economy. The plaintiff

seeks remand on the bases that the ALJ failed to account for a moderate limitation in concentration,

persistence, or pace, erred in determining whether her hip impairment would last 12 months, made

inadequate credibility findings, and improperly discounted the opinions of treating and examining

sources. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-

14. I find no reversible error and, accordingly, affirm the commissioner's decision.[3]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

[3] The plaintiff also asserts that the ALJ erred in relying on flawed vocational testimony. *See* Statement of Errors at 14. However, that point hinges on the merit of the prior points. *see id.*, and, therefore, I do not separately address it.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2014, Finding 1, Record at 13; that she had the severe impairments of gastroparesis, osteoarthritis, affective disorder not otherwise specified, anxiety disorder not otherwise specified with post-traumatic stress features, personality disorder traits, and hypermobility, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was able to perform simple, routine tasks, could work in sight of coworkers but not undertake work requiring teamwork or collaborative work, could not work with the general public, and was able to adapt to routine changes in the work environment and make basic work decisions, Finding 5, *id.* at 17; that, considering her age (37 years old, defined as a younger individual, on her alleged disability onset date, September 1, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 26; and that she, therefore, had not been disabled from September 1, 2012, her alleged onset date of disability, through the date of the decision, November 28, 2017, Finding 11, *id.* at 27-28. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Failure To Account for Moderate Mental Health Limitation

The plaintiff first complains that, although the ALJ found that she had a moderate limitation in concentrating, persisting, or maintaining pace, she failed to include a corresponding RFC restriction, warranting remand. *See* Statement of Errors at 4-5.

The commissioner rejoins that the ALJ adequately accounted for that moderate limitation by limiting the plaintiff to simple, routine tasks not requiring teamwork or collaboration. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 2. He correctly notes that in *Boyce v. Colvin*, No. 1:13-cv-00381-JAW, 2014 WL 5473237 (D. Me. Oct. 27, 2014), this court stated that it had "'repeatedly upheld limitations to simple, routine, and/or repetitive work when the claimant has been found to be moderately limited in the area of concentration, persistence, or pace.'" *Id*. (quoting *Boyce*, 2014 WL 5473237, at *4). The assessed limitation, hence, adequately reflects the moderate limitation at issue.

At oral argument, the plaintiff's counsel sought to distinguish *Boyce* on the basis that in *Boyce* and cases cited therein, the mental RFC finding at issue had been supported by an expert's opinion. However, as counsel for the commissioner rejoined, any error is harmless because the

plaintiff identifies no evidence that she had greater limitations. *See also id.* at 2-3 (citing *Paquin v. Colvin*, No. 1:13-cv-360-JDL, 2014 WL 6679123, at *3 (D. Me. Nov. 25, 2014)).

At oral argument, the plaintiff's counsel attempted to rectify that oversight, asserting that agency examining consultant Roger S. Zimmerman, Ph.D., had assessed greater limitations than found by the ALJ in stating that the plaintiff was "able to communicate, understand, attend, *at least on a short-term basis*," and, if "*relatively free of stress*, . . . make decisions in a relatively independent fashion." Record at 657-58 (emphasis added).

Nonetheless, as counsel for the commissioner argued, the point falters on its merits. The ALJ explained that, although she generally gave great weight to Dr. Zimmerman's assessment, she did not adopt his findings verbatim, deeming "some of his language to be somewhat vague[.]" Record at 24. The language on which the plaintiff's counsel relied at oral argument is indeed vague, setting forth no particular functional limitations that could have been incorporated into a mental RFC determination.

Remand, accordingly, is unwarranted on this basis of this point of error.

### B. Failure To Project Severity of Hip Impairment

The plaintiff testified that she injured her right hip in March 2017, when she slipped on ice. *See id.* at 13. In her November 28, 2017, decision, the ALJ deemed that impairment nonsevere, finding that it did not meet the so-called "duration requirement" and, in any event, likely would not have precluded light work. *See id*. at 13-14; 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months."); *Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002) (commissioner's 12-month duration requirement applies "to both the 'impairment' and the 'inability' to work requirements"). In so finding, the ALJ relied on the testimony of independent medical expert Peter

Webber, M.D., at the plaintiff's August 29, 2017, hearing and a September 2017 note documenting the plaintiff's visit to orthopedic surgeon Benjamin H. Huffard, M.D. *See* Record at 13-14.

The plaintiff contends that the ALJ nonetheless (i) failed to project the severity of her hip impairment as of the 12-month mark in March 2018, as required by Social Security Ruling 82-52 ("SSR 82-52"), (ii) ignored Dr. Webber's testimony that her hip condition, which had yet to be fully evaluated, could last for a year, (iii) impermissibly interpreted raw medical evidence in relying on Dr. Huffard's notation that, if the plaintiff were to elect to undergo surgery, the odds of significant and meaningful improvement were approximately 85 percent, and (iv) failed to develop the record adequately. *See* Statement of Errors at 5-8. She adds that Dr. Webber's testimony did not support a finding that, if her knee condition had been found severe, she remained capable of performing light work. *See id*. at 8-9.

As the commissioner rejoins, *see* Opposition at 7-8, any error is harmless. At hearing, Dr. Webber testified that the plaintiff's hip impairment would rule out climbing ladders, ropes, or scaffolds, prolonged walking, or prolonged standing. *See* Record at 95. Asked to define prolonged standing or walking, he testified, "more than an hour or two." *Id*. at 96.

Assuming, as the plaintiff argues, *see* Statement of Errors at 8-9, that Dr. Webber limited her to standing or walking for no more than an hour or two in a workday (as opposed to no more than an hour or two at a time), she remained capable of performing sedentary work, *see, e.g.*, Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service Rulings* 1983-1991 ("SSR 83-10"), at 29 (the full range of sedentary work entails, *inter alia*, sitting for approximately six hours, and standing or walking for no more than about two hours, in an eight-hour workday).

As the commissioner observes, *see* Opposition at 7, a vocational expert ("VE") present at the plaintiff's hearing testified that an individual with the same mental and physical limitations

found by the ALJ, except that the individual could stand and/or walk for only two hours in an eight-hour workday, could perform three sedentary jobs, *see* Record at 116-17. The VE clarified that a limitation against climbing ladders, ropes, or scaffolds would not affect those jobs' availability. *See id.* at 119.

The ALJ did not rely at Step 5 on the sedentary jobs the VE had identified, *see id.* at 27, implicating the rule of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), that "a reviewing court . . . must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) (citation and internal quotation marks omitted). Nonetheless, as the commissioner observes, *see* Opposition at 8, there is an exception to the *Chenery* rule "when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion[,]" *Day*, 2012 WL 6913439, at *10 (citation and internal punctuation omitted). That exception applies in this case. Remand to correct error in deeming the plaintiff's hip impairment nonsevere for failure to meet the duration requirement would be an empty exercise when it is already clear that, even if the impairment had been found severe, the plaintiff would have retained the capability to perform three specific sedentary jobs.[4]

### C. Flawed Credibility Finding

The plaintiff next contends that the ALJ committed reversible error in assessing her subjective statements when she (i) determined the plaintiff's RFC before assessing the credibility

---

[4] At oral argument, the plaintiff's counsel contended that remand was not an empty exercise because the VE responded to a flawed hypothetical question. Specifically, she argued that the ALJ failed to assess restrictions properly accounting for the plaintiff's moderate limitation in concentrating, persisting, or maintaining pace or to find a severe hip impairment. These points do not carry the day. For the reasons explained above, the plaintiff identifies no reversible error in the ALJ's assessment of her mental RFC. And, although the ALJ did not assess a severe hip impairment, she elicited testimony from Dr. Webber concerning the restrictions the hip impairment (if found severe) would have imposed. *See* Record at 95-96.

of her statements, an approach decried in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), and *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012), and (ii) failed to make specific credibility findings, "forcing the reader to attempt to infer possible bases for her assessment from scattered comments in the decision." Statement of Errors at 9-11. I find no error.

First, as the commissioner observes, *see* Opposition at 9, *Mascio* and *Bjornson* are distinguishable. In both cases, ALJs deemed claimants' statements "not credible to the extent they are inconsistent with the above [RFC] assessment." *Mascio*, 780 F.3d at 639 (citation and internal quotation marks omitted); *Bjornson*, 671 F.3d at 644 (internal quotation marks omitted). In this case, by contrast, the ALJ deemed the plaintiff's statements "not entirely consistent with the medical evidence and other evidence in the record[.]" Record at 18.

Second, the ALJ detailed both medical and other evidence of record that she deemed inconsistent with the plaintiff's allegations of disabling symptoms, including the plaintiff's course of treatment, the presence of a number of normal to mild findings on objective testing and examination, activities of daily living suggesting that the plaintiff was less limited mentally and physically than she claimed, and the testimony at hearing of both Dr. Webber and independent psychological expert James M. Claiborn, Ph.D. *See id*. at 18-23.

This approach comported with Social Security Ruling 16-3p ("SSR 16-3p"), pursuant to which the factors that an ALJ is to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include (i) whether the individual's statements "are consistent with the medical signs and laboratory findings of record[,]" that is, the objective medical evidence, (ii) the individual's daily activities, (iii) "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms[,]" and (iv) "[t]reatment, other than medication, an individual receives or has received for relief of pain or

other symptoms[.]" SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2019), at 668-69, 671.

Accordingly, I find no basis on which to disturb the ALJ's assessment of the plaintiff's subjective statements. *See, e.g., Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Vito S. S., Jr. v. Saul*, No. 2:18-cv-00229-GZS, 2019 WL 2578077, at *2 (D. Me. June 24, 2019) (rec. dec., *aff'd* July 15, 2019) (although SSR 16-3p eliminated the use of the term "credibility," *Frustaglia*'s deferential standard of review continues to apply).

### D. Improper Discounting of Treating, Examining Source Opinions

The plaintiff, finally, seeks remand on the basis that the ALJ erred in failing to give controlling weight to the opinion of treating rheumatologist Aaron Jackson, M.D., a specialist who had treated her for nearly four years, and whose opinion and records were consistent with those of her primary care physician, Manju Hilary, M.D. *See* Statement of Errors at 11-12. She adds that, for similar reasons, the ALJ should have credited the opinions of Dr. Hilary and treating psychiatric nurse David Saphier, PA-C. *See id.* at 13. Finally, she contends that the ALJ erred in giving very little weight to the opinion of examining consultant John Newcomb, M.D., because he was hired by her attorney, which she asserts suggests bias and maligns Dr. Newcomb's professional reputation. *See id.*

This amounts to an unavailing invitation to the court to reweigh the evidence. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate

question of disability is for him, not for the doctors or for the courts."); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017) (rec. dec., *aff'd* July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019) ("The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand.").

As the commissioner notes, *see* Opposition at 12, the Jackson opinion was entitled to controlling weight only if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1572(c)(2), 416.927(c)(2). The ALJ relied on Dr. Webber's testimony at hearing that Dr. Jackson's opinion was not consistent with findings on his own physical examinations or on imaging studies. *See* Record at 22-23. She further concluded that Dr. Jackson's findings appeared to be based on the plaintiff's self-reports. *See id.* at 23. The plaintiff does not separately challenge this reasoning. *See* Statement of Errors at 11-13. Nor does she separately challenge the ALJ's reasons for discounting the Hilary and Saphier opinions. *See* Record at 23, 25; Statement of Errors at 11-13.

Finally, as the commissioner observes, *see* Opposition at 16, while the ALJ noted that Dr. Newcomb had been hired by the plaintiff's representative, she did not indicate that she discounted his opinion on that basis, *see* Record at 24. In any event, even assuming that the mere accurate mention of that circumstance is error, it is at most harmless error. In discounting the Newcomb opinion, the ALJ relied on Dr. Claiborn's testimony that the opinion was "substantially more pathological than most of the rest of the record" and her own finding that Dr. Newcomb had "relied upon the [plaintiff's] self-report of her symptoms and limitations, which were out of proportion to and in excess of those she reported to her treating providers." *Id.* (citations and internal quotation

marks omitted). The plaintiff does not separately challenge these facially proper reasons for discounting the Newcomb opinion. *See* Statement of Errors at 13-14; *Waddell v. Colvin*, No. 2:14-cv-105-JHR, 2015 WL 1723682, at *6-7 (D. Me. Apr. 14, 2015) (rejection of one-time examining physician's opinion in part on the basis that it constituted an "advocacy opinion" did not warrant remand when ALJ provided other supportable reasons for rejecting the opinion).

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 29th day of September, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge